UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**CYNTHIA LEE SNOW DUNCAN,**

      **Plaintiff,**

v.                                            Case No: 6:16-cv-2023-Orl-28DCI

**COMMISSIONER OF SOCIAL
SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Cynthia Lee Snow Duncan (Claimant) appeals to the District Court from a final decision of the Commissioner of Social Security (the Commissioner) denying her applications for disability insurance benefits (DIB) and supplemental security income (SSI). Doc. 1; R. 1-4, 228-38. Claimant argued that the Administrative Law Judge (the ALJ) erred by: 1) failing "to weigh the opinion of chiropractor Andrew George, D.C."; 2) failing "to consider the [Claimant's] anteroseptal infarct"; and 3) improperly finding "that the [Claimant] does not have a combination of impairments that are severe and [improperly failing] to find several of [Claimant's] impairments to be medically determinable." Doc. 21 at 9-11, 15-16, 19-22. For the reasons set forth below, it is **RECOMMENDED** that the Commissioner's final decision be **AFFIRMED**.

### I.    THE ALJ'S DECISION

In February 2013, Claimant filed applications for DIB and SSI. R. 228-38. Claimant alleged a disability onset date of August 13, 2009. *Id.*

The ALJ issued his decision on November 10, 2015. R. 22-34. In his decision, the ALJ found that Claimant had the following medically determinable impairments: "migraines,

depression, PTSD, anxiety and Bipolar." R. 24. However, the ALJ found that Claimant's impairments, or combination thereof, did not significantly limit Claimant's ability to perform basic work-related activities for 12 consecutive months. R. 24-25. The ALJ therefore found that Claimant did not have a severe impairment or combination of impairments, and thus, that Claimant was not disabled between the alleged onset date and the date of the ALJ's decision. R. 24-25, 34.

## II.    STANDARD OF REVIEW

"In Social Security appeals, [the court] must determine whether the Commissioner's decision is 'supported by substantial evidence and based on proper legal standards.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560. The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *Phillips v. Barnhart*,

357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

### III.    ANALYSIS

The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled. *Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v)). At step two, the ALJ must determine whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) (stating that step two is a threshold inquiry that "allows only claims based on the most trivial impairments to be rejected"); *see also* 20 C.F.R. §§ 404.1521(a), 416.921(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.[1]").[2] Although the claimant bears the burden of proof in establishing that the claimant suffers from a severe impairment or combination of impairments, "claimant's burden at step two is mild." *McDaniel*, 800 F.2d at 1031; *see Gibbs v. Barnhart*, 156 F. App'x 243, 246 (11th Cir. 2005) (stating that the

---

[1] The phrase "basic work activities" is defined as "abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). Examples of basic work activities include "(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting." 20 C.F.R. §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6).

[2] Effective March 27, 2017, sections 404.1521(a) and 416.921(a) were moved to sections 404.1522(a) and 416.922(a), respectively. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01 (Jan. 18, 2017).

claimant must prove that he or she suffers from a severe impairment or combination of impairments).³ If at step two the ALJ finds that a claimant has even one severe impairment, then the ALJ must proceed to the next sequential steps.

### A. Failure to Properly Weigh Andrew George, D.C.'s Opinion

Claimant argued that the ALJ erred by failing to weigh the opinions of Claimant's chiropractor, Dr. George. Doc. 21 at 9-11. Specifically, Claimant argued that the ALJ failed to explain the weight given to Dr. George's opinion "that [Claimant] has numerous permanent functional impairments and has a 14 percent whole person impairment rating, based on the 9 percent left wrist impairment and the 7 percent lumbar herniation." *Id* at 10. Claimant further noted that Dr. George opined that Claimant had reduced functional capacity, would likely have future exacerbations from activities of daily living, and would require future chiropractic care and possibly injections. *Id*. Claimant also claimed that Dr. George "endorsed [Claimant's] statements concerning the limitations of lifting 5-10 pounds, walking, bending, sitting, standing, and others." *Id*. at 11. Finally, Claimant asserted that Dr. George "stated that it is well documented that [Claimant] has reduced range of motion, increased wear and tear, loss of function and enjoyment of life." *Id*. Claimant argued that Dr. George's opinions conflict with the ALJ's finding that Claimant did not have any severe impairments.⁴ *Id*.

---

³ In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority. *See* 11th Cir. R. 36-2.

⁴ Claimant also noted multiple exam findings and self-reported limitations, but these do not constitute medical opinions. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011) ("'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.'") (quoting 20 C.F.R. § 404.1527(a)(2)) (alterations in original). For a discussion of whether or not the ALJ's decision was supported by substantial evidence, *see infra* Section III.C.

The Commissioner argued that any purported failure by the ALJ to weigh Dr. George's opinions was harmless error because Dr. George's opinions did not directly contradict the ALJ's decision. *Id*. at 11-13. In the alternative, the Commissioner argued that even if Dr. George's opinions did contradict the ALJ's decision, the ALJ adequately discussed the statements and other evidence such that the ALJ's reasoning could be followed. *Id*. at 13-15.

The Eleventh Circuit Court of Appeals recently addressed a similar situation. *See Chapman v. Comm'r of Soc. Sec.*, No. 17-11217, 2017 WL 4260806 (11th Cir. Sept. 26, 2017). In *Chapman*, the claimant argued that the ALJ erred by failing to address the opinion of the claimant's chiropractor that the claimant should avoid prolonged sitting or standing, as well as repetitive motion activities with the lumbar and cervical spine. *Id*. at *2. In conducting its analysis, the court stated as follows:

> Chiropractors are not an "acceptable [medical] source" for these purposes. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (per curiam); *see* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). There is therefore no requirement that an ALJ give special weight to a chiropractor's opinion or specifically explain his reasons for disregarding the opinion. *Cf. Winschel*, 631 F.3d at 1179 (requiring ALJs to give substantial weight or explain their reasons for disregarding treating physicians' opinions). Instead, the ALJ need only "ensure that the discussion of the evidence . . . allows a claimant or subsequent reviewer to follow [its] reasoning." SSR 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006).

*Id*. (alterations in original).[5] The court found that "[t]he ALJ properly discussed the evidence from [the claimant's chiropractor], despite not explicitly explaining the weight given to [the claimant's chiropractor's] opinion." *Id*.

---

[5] The Social Security Administration (SSA) rescinded SSR 06-03p on March 27, 2017. *See* Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 FR 15263-01 (Mar. 27, 2017). However, the rescission is only effective for claims filed on or after March 27, 2017. *Id*. Thus, SSR 06-03p applies to Claimant's claim. *See id*.; *see also Morgan on Behalf of JC v. Berryhill*, 2017 WL 3476066, at *12 n.2 (E.D. La. June 30, 2017), *report and recommendation adopted*, 2017 WL 3456299 (E.D. La. Aug. 11, 2017); *Hall v. Berryhill*, 2017 WL 2805045, at *12 n.13

Similarly, although the ALJ in this case did not explicitly state the weight given to Dr. George's opinions, the ALJ properly discussed the evidence from Dr. George. R. 30, 32. Among other things, the ALJ specifically noted Dr. George's opinion that Claimant had a 14% whole person impairment rating, and noted that medication and some movement relieved the pain, that Claimant's range of motion of the lumbar spine was "mildly" limited in extension and bilateral lateral flexion, that Dr. George's final recommendation was to continue conservative care, and that Dr. George stated that Claimant could return to work but should monitor for any increase in pain.[6] *Id*. Because the ALJ properly discussed and considered the evidence from Dr. George, and because the undersigned can follow the ALJ's reasoning, the undersigned finds that the ALJ did not err by failing to explicitly weigh Dr. George's opinions.[7]

Claimant's citation to *Williams v. Astrue*, No. 3:07-cv-541-J-HTS, 2008 WL 1930619, *2 (M.D. Fla. Apr. 30, 2008) is unpersuasive. R. 9-10. In *Williams*, the court found that the ALJ erred by summarily dismissing the chiropractor's opinions because the chiropractor was not an acceptable medical source. *See Williams*, 2008 WL 1930619, *2. But there is no evidence here

---

(D.S.C. June 13, 2017), *report and recommendation adopted*, 2017 WL 2797513 (D.S.C. June 28, 2017) ("The rescission is inapplicable to Plaintiff's claim because it applies only to claims filed after March 27, 2017.").

[6] The ALJ further noted elsewhere in his decision that Claimant's range of motion was only minimally diminished from baseline, that Claimant was able to move all extremities with full strength in the lower extremities, that Claimant's sensation was normal, that Claimant had no history of inpatient hospitalization, and that there was no evidence to establish any side effects from Claimant's medications. R. 30-32. The ALJ also noted the lack of supporting evidence in the record to establish that Claimant suffered from a severe impairment, and found that the record contains no medical evidence to establish that Claimant's medically determinable impairments are severe. *Id*. at 31-32. The ALJ found that Claimant did not have any degree of limitation. *Id*. at 31.

[7] Whether or not the ALJ's decision was supported by substantial evidence will be discussed further. *See infra* Section III.C.

to suggest that the ALJ summarily dismissed Dr. George's opinion solely because Dr. George is a chiropractor. To the contrary, the ALJ discussed Dr. George's records at length and specifically noted Dr. George's opinion regarding Claimant's impairment rating. The undersigned thus finds that the ALJ considered Dr. George's records and opinions, and did not summarily dismiss Dr. George's opinion solely because Dr. George was a chiropractor.

Regardless of the foregoing, even if the Court were to find that the ALJ erred by failing to explicitly weigh Dr. George's opinions, the error would have been harmless. Dr. George opined that Claimant had a 14% whole person impairment rating, had reduced functional capacity that caused permanent and consequential limitations, and would likely have future exacerbations from activities of daily living. Those opinions, taken as such, do not constitute opinions as to the extent that Claimant's ability to do basic work activities was – or currently is – restricted, and thus, do not directly contradict the ALJ's determination that Claimant's impairments were not "severe." *See McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) ("[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality."). Further, Dr. George's use of the word "consequential" in describing Claimant's limitations is conclusory and not determinative as to the extent of Claimant's ability to do basic work activities. Claimant's position that Dr. George "endorsed [Claimant's] statements concerning the limitations of lifting 5-10 pounds, walking, bending, sitting, standing, and others" is not supported by the record. The undersigned finds no evidence in Dr. George's records to indicate that Dr. George adopted Claimant's self-reported limitations as his own opinion. R. 446-53. Finally, Claimant's assertion that Dr. George "stated that it is well documented that [Claimant] has reduced range of motion,

increased wear and tear, loss of function and enjoyment of life" does not comport with what Dr. George actually said, which was as follows:

> [Claimant] has suffered multiple permanent injuries as a direct result of the [Motor Vehicle Accident] on 12/27/2014. She has permanent scar tissue and soft tissue damage that will never fully heal and will predispose her to *future* pain. It is well documented and accepted that multiple sequelae[8] of an unstable spine exist, including:
>
> - Increased facet shear leading to increased wear and tear
> - Improper mechanical loading of the spine
> - Degenerative disc disease
> - Osteophyte formation and ligamentous calcification
> - Loss of range of motion
> - Loss of function and enjoyment of life
> - Chronic pain
>
> **This process of degenerative changes often takes *years* to progress. Unfortunately, the degeneration is accelerated in whiplash patients and *often leads to* limited range of motion, reduced functional capacity, and chronic pain.**

R. 451 (italics and footnote added) (bold in original). It is clear from Dr. George's statements that Dr. George was not referring to limitations that Claimant suffered from at the time, as Claimant alleged, but rather, was explaining possible limitations that Claimant may suffer from in the future as a result of Claimant's "scar tissue and soft tissue damage." For all of the foregoing reasons, the undersigned finds that even to the extent that the ALJ erred by failing to explicitly weigh Dr. George's opinions, the ALJ's error would have been harmless. *See, e.g.*, *Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) (per curiam) (failure to weigh a medical opinion is harmless error if the opinion does not directly contradict the ALJ's RFC determination); *Caldwell v. Barnhart*, 261 F. App'x 188, 190 (11th Cir. 2008) (per curiam) (similar). The undersigned further notes that the ALJ discussed Dr. George's records at length and that the ALJ's decision was

---

[8] "A condition following as a consequence of a disease." *Sequela*, STEDMAN'S MEDICAL DICTIONARY (28th ed. 2006).

consistent with Dr. George's records. *See Lara v. Comm'r of Soc. Sec.*, 2017 WL 3098126, at *6 (11th Cir. July 21, 2017) (per curiam) (finding that any error in failing to assign weight to an opinion was harmless where the ALJ's decision reflected that the ALJ had considered the records and the ALJ's decision was consistent with the records).

Accordingly, it is **RECOMMENDED** that the Court reject Claimant's first assignment of error.

### B. Failure to Discuss Claimant's Alleged Anteroseptal Infarct

Claimant argued that the "ALJ's decision is unsupported by substantial evidence because the ALJ failed to consider the [Claimant's] anteroseptal infarct and evaluate its effect on the [Claimant's] ability to work." Doc. 21 at 15-16. According to Claimant, one of her echocardiograms (R. 387) was consistent with anteroseptal infarct of an undetermined age. *Id*. at 16. But a finding that Claimant's echocardiogram was *consistent* with anteroseptal infarct is not the same as a finding that Claimant suffered from an anteroseptal infarct. And aside from Claimant's echocardiogram, Claimant did not cite to a single medical record that so much as mentioned anteroseptal infarct, let alone diagnosed Claimant with the condition. *Id*. at 15-16. Nor did Claimant cite to any evidence to suggest that Claimant ever received treatment for anteroseptal infarct. *Id*. Further, Claimant, who was represented by counsel, did not raise the alleged condition at the hearing before the ALJ. R. 41-56.

Although the ALJ was required to consider Claimant's condition as a whole, there is no rigid requirement that the ALJ specifically refer to every piece of evidence. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [the district court or this Court] to conclude that [the ALJ]

considered [the claimant's] medical condition as a whole.'") (citation omitted). Here, it is apparent that the ALJ considered Claimant's condition as a whole. The ALJ thoroughly discussed Claimant's medical records and provided his reasons for finding that Claimant did not suffer from a severe impairment. As such, the fact that the ALJ did not refer to the results of a single echocardiogram – results that were not otherwise supported by the record – does not render the ALJ's decision erroneous. Moreover, Claimant's suggestion that she suffered from an anteroseptal infarct is not supported by the record, and thus, the ALJ did not err by failing to mention Claimant's alleged anteroseptal infarct.

Regardless, even if the Court were to find that the ALJ erred by failing to mention Claimant's alleged anteroseptal infarct, the ALJ's error would have been harmless. Again, a finding that a single echocardiogram is consistent with anteroseptal infarct is not the same as a finding that Claimant suffered from an anteroseptal infarct. But even if Claimant had been diagnosed with an anteroseptal infarct, that alone, without more, would not have been sufficient to demonstrate that Claimant suffered from limitations that directly contradicted the ALJ's decision. *See McCruter*, 791 F.2d at 1547 ("[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality."). Claimant offered no argument to suggest that the mere diagnosis of an anteroseptal infarct somehow directly contradicted the ALJ's decision. Further, the ALJ properly considered Claimant's records, including the records containing the subject echocardiogram, and repeatedly noted that Claimant denied chest pain and shortness of breath.[9] R. 27-34; *see also* R. 357, 361, 367, 369-70, 372, 374, 378, 420, 426.

---

[9] Claimant alleged that chest pain and shortness of breath are symptoms that can be caused by an anteroseptal infarct. Doc. 21 at 16 n.4.

Because the ALJ considered the pertinent evidence and the evidence is consistent with the ALJ's findings, the undersigned finds that any error the ALJ may have committed by failing to specifically mention Claimant's alleged anteroseptal infarct was harmless. *See, e.g.*, *Lara*, 2017 WL 3098126, at *6 (finding that any error in failing to assign weight to an opinion was harmless where the ALJ's decision reflected that the ALJ had considered the records and the ALJ's decision was consistent with the records); *Wright*, 153 F. App'x at 684; *Caldwell*, 261 F. App'x at 190.

Accordingly, it is **RECOMMENDED** that the Court reject Claimant's second assignment of error.

### C. Failure to Find Severe Impairments

Claimant argued that the "ALJ improperly found that [Claimant] does not have a combination of impairments that are severe and improperly failed to find several of [Claimant's] impairments to be medically determinable." Doc. 21 at 19-22. Specifically, Claimant argued that there is ample evidence "showing that the impact of [Claimant's] impairments is more than a minor abnormality." *Id*. at 20. Claimant further argued that the ALJ failed to recognize Claimant's alleged gastroesophageal reflux disease, lumbar spine problems, left wrist tear, hypertension, and history of anteroseptal infarction as medically determinable impairments. *Id.* at 21-22. But Claimant did not explain how this alleged failure contradicted the ALJ's decision. *Id*. In short, Claimant argued, "the evidence in the record . . . shows that [Claimant's] impairments have more than mild impact on her ability to work." *Id*. at 22. Thus, Claimant argued, the ALJ's decision was not supported by substantial evidence. *Id*.

The Commissioner argued that the ALJ's decision was supported by substantial evidence. *Id*. at 22-25. Specifically, the Commissioner argued that "[n]umerous physical examinations showed no significant abnormalities, including no complications from [Claimant's] hypertension."

*Id*. at 22. The Commissioner also argued that any error in failing to recognize Claimant's other alleged conditions as medically determinable impairments was harmless. *Id*. at 24-25.

Upon review, the undersigned finds that the ALJ's determination that Claimant's limitations were not severe was supported by substantial evidence. With few exceptions, Claimant's medical records prior to her motor vehicle accident (MVA) on December 27, 2014 consistently showed that Claimant suffered from no more than minor limitations in her ability to do basic work activities. For instance, the medical records showed that Claimant was negative for chest pain and shortness of breath; was in no acute distress; had no joint pain, muscle aches, headaches, fatigue, abdominal pain, or weakness or numbness of the lower extremities; had normal gait and normal range of motion in her back and extremities; had full strength in her lower extremities, and had only "minimal" depression. 357, 361, 362, 367, 370, 372, 376, 378-79, 420.

Although Claimant began to present with some additional limitations after her MVA on December 27, 2014 – more than five years after Claimant's alleged onset date – substantial evidence still supports the ALJ's decision that Claimant's limitations had no more than a minor effect on her ability to do basic work activities. Claimant was not taken to the hospital following her MVA. R. 409. Instead, on January 5, 2015, less than two weeks after her MVA, Claimant presented to Jim Clapprood, D.C. R. 409-11. Dr. Clapprood noted that Claimant exhibited a guarded gait, right antalgia, moderate range of motion loss in the cervical and lumbar regions, and was positive for Bechterew's test, Kemp's test, and Straight Leg Raising test. *Id*. Dr. Clapprood assessed Claimant with a lumbar sprain or strain, a thoracic sprain or strain, a cervical sprain or strain, spasm of the muscle, myalgia, and myositis. *Id*.

However, Claimant's medical record from Evan Packer, M.D. at the Florida Spine & Joint Institute dated February 28, 2015 – approximately two months after Claimant's MVA – provides

that Claimant's range of motion was only "minimally" diminished from baseline, that Claimant was able to move all extremities with full strength, that Claimant's straight leg raising was unremarkable, that Claimant's sensation was normal, and that Claimant's heal and toe walking was normal. R. 425-26. Dr. Packer recommended that Claimant continue with conservative care, stated that "based on the MRI findings she *may* have *episodic* exacerbations of symptoms requiring future therapy sessions and injections," and stated that Claimant may return if her symptoms appear to change. *Id*. (emphasis added).

Similarly, Claimant presented to Andrew George, D.C. on July 29, 2015 – approximately seven months after Claimant's MVA. R. 446-53. Dr. George noted that Claimant's lumbar range of motion was only "mildly" limited while Claimant's range of motion in her left wrist was within normal limits.[10] *Id*. Dr. George also noted that Claimant's Bechterew's test was negative bilaterally, that he found no tenderness or trigger points in Claimant's left wrist, and that Claimant's cervical sprain or strain, thoracic sprain or strain, and lumbosacral sprain or strain were "resolved."[11] *Id*. Dr. George noted that "[m]edication and some movement relieve the pain," and recommended that Claimant continue conservative care "to include chiropractic adjustments, physical therapy, massage and physical therapy, 1-2x/month, for supportive care and pain relief." *Id*. Dr. George further noted that Claimant could return to work so long as she monitored and

---

[10] Dr. George further noted that Claimant "occasionally" had a limp associated with pain, but this appears to have been self-reported by Claimant, and the ALJ found that Claimant was not fully credible. Regardless, even to the extent that Dr. George did observe a limp associated with pain, this alone is not sufficient to render the ALJ's decision unsupported by substantial evidence when viewing the record as a whole.

[11] Dr. George also noted a positive Kemp's test and a positive Straight Leg Raising test. R. 448.

reported any increase in pain. *Id*. Dr. George did not opine as to any specific functional limitations.[12]

Further, the undersigned notes the general lack of evidence provided by Claimant in support of her position. Specifically, there is nothing in the medical records to indicate that Claimant was ever hospitalized or that Claimant received anything more than sporadic, conservative treatment. And Claimant provided only a handful of medical records from the time period following her MVA. R. 407-12, 416-18, 425-26, 441-44, 446-53. In addition, the undersigned notes that Claimant twice failed to appear for a consultative examination that had been arranged during the initial level of adjudication. R. 31, 69. As such, the ALJ's determination that there was insufficient evidence in the record to substantiate the presence of a disorder – even when considering Claimant's "mild" burden at step two – was supported by substantial evidence.[13]

---

[12] For a discussion of Dr. George's opinion, *see supra* Section III.A.

[13] The ALJ noted Claimant's failure to appear for the consultative examination, the lack of any hospitalizations, the minimal treatment notes, and Claimant's sporadic treatment from the alleged onset date through the date of the ALJ's decision. R. 32. In addition, the ALJ found that Claimant was not fully credible because Claimant's complaints and reported symptoms exceeded the findings in the objective medical evidence. R. 31. Claimant did not challenge the ALJ's credibility determination or argue that the ALJ's decision was not based on substantial evidence due to Claimant's testimony, and thus waived any arguments to that effect. *See See, e.g.*, *Jacobus v. Comm'r of Soc. Sec.*, No. 15-14609, 2016 WL 6080607, at *3 n.2 (11th Cir. Oct. 18, 2016) (stating that claimant's perfunctory argument was arguably abandoned); *Gombash v. Comm'r of Soc. Sec.*, 566 Fed. App'x. 857, 858 n.1 (11th Cir. 2014) (stating that the issue was not properly presented on appeal where claimant provided no supporting argument); *NLRB v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived."); *Gaskey v. Colvin*, No. 4:12-CV-3833-AKK, 2014 WL 4809410, at *7 (N.D. Ala. Sept. 26, 2014) (refusing to consider claimant's argument when claimant failed to explain how the evidence undermined the ALJ's decision) (citing *Singh v. U.S. Atty. Gen*, 561 F.3d 1275, 1278 (11th Cir. 2009) ("[A]n appellant's simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes our considering the issue on appeal.")).

Claimant's argument that there is ample evidence showing that Claimant's impairments caused more than a minor abnormality is without merit. First, Claimant relied on the records of Dr. Utter to establish moderate limitations. Doc. 21 at 20. But as previously eluded to, Dr. Utter's records do not render the ALJ's decision unsupported by substantial evidence given that Dr. Utter saw Claimant within a month of Claimant's MVA and Claimant's subsequent medical records showed only minimal limitations and pain that was controlled by medication. R. 407-12, 416-18, 425-26, 441-44, 446-53. Further, there is a dearth of medical records following Claimant's MVA to establish anything but sporadic, conservative treatment. *Id*. Second, Claimant relied on the records of Dr. George. Doc. 21 at 20. But, as previously discussed, Dr. George's medical records contained substantial evidence supporting the ALJ's decision. *See supra* Section III.C; *see also supra* Section III.A. The statements in Dr. George's records that Claimant had an occasional limp with pain and had problems with her wrist about 25 percent of the time appear to have been self-reported by Claimant. Regardless, the standard is not whether there is some evidence to support Claimant's position, but whether there is substantial evidence to support the ALJ's decision. *Barnes*, 932 F.2d at 1358 ("Even if we find that the evidence preponderates against the Secretary's decision, we must affirm if the decision is supported by substantial evidence.") (citation omitted). And as previously discussed, substantial evidence supports the ALJ's decision.

Claimant's argument that her hypertension was not under good control despite treatment is unavailing. Doc. 21 at 20-21. Although Claimant argued that her blood pressure results were so high that they warranted emergency care and would thus "certainly affect at least some exertional activity and would cause more than a minimal impact on [Claimant's] ability to work," Claimant cited to absolutely nothing in the record to suggest that Claimant had ever received emergency care or to suggest that Claimant's hypertension had any impact whatsoever on her

ability to work. *Id*. The "mere existence of [an impairment] does not reveal the extent to which [the impairment] limit[s the Claimant's] ability to work or undermine the ALJ's determination in that regard." *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (citing *McCruter*, 791 F.2d at 1547). As previously discussed, the record contains substantial evidence supporting the ALJ's decision, and Claimant's unsupported, conclusory argument to the contrary does not persuade the undersigned otherwise.[14]

Finally, to the extent the ALJ could be said to have erred by failing to find several of Claimant's impairments to be medically determinable, any such error would have been harmless.[15] It is clear from the ALJ's decision that he considered Claimant's medical records as a whole, as the ALJ discussed Claimant's medical records in detail. R. 24-34. In fact, the ALJ specifically mentioned Claimant's alleged gastroesophageal reflux disease, hypertension, lumbar spine problems, and left wrist problems. *Id*. The only alleged condition listed by Claimant that the ALJ did not mention was Claimant's alleged anteroseptal infarction, but as previously discussed, the ALJ did not err by failing to mention Claimant's alleged anteroseptal infarction. *See supra* Section III.B. Further, the presence of the foregoing impairments does not reveal the extent to which Claimant's ability to work was limited, and thus does not undermine the ALJ's determination. *See Moore*, 405 F.3d at 1213 n.6 (citing *McCruter*, 791 F.2d at 1547). Therefore, because the ALJ properly considered the record as a whole, and because the ALJ's decision was supported by substantial evidence and was consistent with the record, any purported error in failing to find the

---

[14] The undersigned further notes that a Community Health Center record dated February 2, 2015 stated that Claimant's hypertension was controlled by medication and that Claimant did not experience side effects from the medication. R. 416-18.

[15] Claimant specifically argued that the ALJ failed to recognize Claimant's alleged gastroesophageal reflux disease, lumbar spine problems, left wrist tear, hypertension, and history of anteroseptal infarction as medically determinable impairments. Doc. 21 at 21-22.

foregoing impairments to be medically determinable was harmless. *See, e.g.*, *Lara*, 2017 WL 3098126, at *6 (finding that any error in failing to assign weight to an opinion was harmless where the ALJ's decision reflected that the ALJ had considered the records and the ALJ's decision was consistent with the records); *Wright*, 153 F. App'x at 684; *Caldwell*, 261 F. App'x at 190).

Accordingly, it is **RECOMMENDED** that the Court reject Claimant's third assignment of error.

## IV. CONCLUSION

For the reasons stated above, it is **RECOMMENDED** that the Court:

1. **AFFIRM** the final decision of the Commissioner; and

2. Direct the Clerk to enter judgment in favor of the Commissioner and against Claimant, and close the case.

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on November 16, 2017.

DANIEL C. IRICK
UNITES STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record
Courtroom Deputy

foregoing impairments to be medically determinable was harmless. *See, e.g.*, *Lara*, 2017 WL 3098126, at *6 (finding that any error in failing to assign weight to an opinion was harmless where the ALJ's decision reflected that the ALJ had considered the records and the ALJ's decision was consistent with the records); *Wright*, 153 F. App'x at 684; *Caldwell*, 261 F. App'x at 190).

Accordingly, it is **RECOMMENDED** that the Court reject Claimant's third assignment of error.

## IV. CONCLUSION

For the reasons stated above, it is **RECOMMENDED** that the Court:

1. **AFFIRM** the final decision of the Commissioner; and

2. Direct the Clerk to enter judgment in favor of the Commissioner and against Claimant, and close the case.

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on November 16, 2017.

DANIEL C. IRICK
UNITES STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record
Courtroom Deputy